The first case on our docket is Kennedy Real Estate v. Human Rights. Ms. Kavanagh, you're up first, is that right? Ready to proceed? Yes, I am. Ms. Kavanagh, you're up. May it please the court, counsel. Good morning, your honors. My name is Jennifer Kavanagh. I'm a private attorney practicing out of Jackson County in the great city of Murfreesboro. It's a great pleasure and honor for me to be here this morning in front of you on behalf of my client, Greg Kennedy, who has operated his family's real estate business, which is a well-respected business in Murfreesboro for the past 40 years, known as Kennedy Real Estate Company, which is also an appellant in this case. Your honors, we are requesting for a review of the final order of the Human Rights Commission order that was entered against Craig Kennedy and Kennedy Real Estate Company. We're requesting this court to vacate and set aside the final order of the Human Rights Commission. Your honors, this case involves a very important question, a statutory construction and interpretation of the Illinois Human Rights Act, which is at issue in this case today. Now, the facts are as follows. This case began on September 19, 2005, when a real estate lease agreement was signed and entered into between Patricia and Richard Niemeyer as tenants and Craig Kennedy and Kennedy Real Estate Company. The terms were for the dwelling place of 1303 North 14th in Murfreesboro. The lease duration was for one year, commencing October 1, 2005, through September 30, 2006. The rent term was $600 per month. The amount of cash due at signing was $1,800, which represented the first month's rent of $600, the last month's rent of $600, and a security deposit of $600. And I would note that the $600 security deposit pursuant to the lease agreement was to ensure the tenants' performance of each and every covenant of the lease. The lease also specified that at any time the lease was terminated, before the expiration date, any and all security deposit is forfeited. Now, on September 26, 2005, the Niemeyers requested an early termination of the lease agreement. They had not yet moved into the dwelling. Instead, they had opted to lease an apartment with the Jackson County Housing Authority in Murfreesboro. They had a wheelchair-accessible apartment, and apparently Richard Niemeyer was wheelchair-bound. Kennedy's dwelling was not wheelchair-accessible. But it's interesting to note that at the time of the signing, Craig Kennedy was unaware and had no knowledge that Richard Niemeyer was wheelchair-bound. Now, during an alleged telephone conversation that took place in September of 2005 between Patricia Niemeyer and Craig Kennedy, Patricia Niemeyer claims, in contrast to the terms of the lease agreement, that Craig Kennedy had agreed to return the entire $1,800 paid to him by the Niemeyers when the dwelling was re-rented. Now, Kennedy denies making this offer. From October 1, 2005 to December 31, 2005, stayed vacant but ready for lease. And this represented a loss of three months' rent, or $1,800, to the Kennedy Real Estate Company. Now, Kennedy managed to rent the dwelling to another person, Larry Wells, beginning January 1, 2006. Wells signed an identical lease agreement, and he signed that agreement on December 15, 2005. Following a telephone conversation between Patricia Niemeyer and Craig Kennedy, Patricia Niemeyer went to the Kennedy Real Estate Office in Murfreesboro. She went there, apparently seeking the refund of her security deposit. Patricia Niemeyer alleged Craig Kennedy informed her upon her arrival at Kennedy Real Estate Office that, one, his secretary had gone for the day and was not returning, two, that he could take care of her because her husband was disabled, and three, that he would give her back her money, but she had to give him a Christmas present. And this was right before Christmas. When Patricia Niemeyer asked Craig Kennedy what he meant by that remark, she said that Craig Kennedy just chuckled, or laughed. Apparently, Patricia Niemeyer got her check, which was for $300, and left. Now, Patricia Niemeyer believed that Craig Kennedy was referring to the fact that if she had sex with him, then he would return her the entire amount of the money. Now, based on Patricia Niemeyer's stated belief, she filed her complaint against Craig Kennedy and Kennedy Real Estate Company seeking nearly $170,000 in damages. Now, the Niemeyers alleged Craig Kennedy had altered the terms, conditions, or privileges of the rental dwelling because of sex and physical handicap discrimination in violation of the Illinois Human Rights Act Section 3-102B and Section 3-102.1B. Now, on April 19, 2006, the Illinois Department of Human Rights filed its housing discrimination complaint against Craig Kennedy and Kennedy Real Estate Company. Now, Kennedy thereafter was procedurally defaulted. And that, Your Honors, is not the end of the story. And in fact, that is only the beginning of the story. Because this case involved no physical touching and no solicitation of sex. That's in the record. That's what the administrative law judge found. Kennedy did nothing wrong. When he defaulted, when he procedurally defaulted, the allegations of the complaint were taken as true. That's correct. Under the law, that's correct. But the only challenges to a default, obviously, is no jurisdiction. And that's exactly what we are challenging here today when it comes to default judgment. Now, this case involves four major points, and I'll try to be brief. The Niemeyers, number one, the Niemeyers never had a cause of action against Craig Kennedy or Kennedy Real Estate under the Illinois Human Rights Act. That the Department of Human Rights and the Human Rights Commission acted without jurisdiction. Number two, that the reviewing court here today has a duty to vacate void orders. And number three, the Department of Human Rights and the Human Rights Commission clearly violated their own stated policy within that act. And four, the administrative law judge's damage award was not supported by any evidence in the record. Now, the Niemeyers never had a cause of action. They never did under the Illinois Human Rights Act. And there's no cause of action under the Illinois Human Rights Act for acts of alleged sexual harassment between a real estate landlord and a tenant. What the Human Rights Commission did was they force-fit the facts of this case into that act to justify their conduct. Now, the Illinois Human Rights Act only creates a cause of action for claims of sexual harassment in the work environment under Article II, where an employer and an employee relationship exists between the parties, and in the higher education setting under Article V, where a higher education representative-student relationship exists between the parties. Now, it's very clear when you look at that statute that the legislature did not create a cause of action for sexual harassment under this act. Because why do I say that? It's very clear. Look at the act in Article II. They specifically state that it's the employer-employee special relationship. In Article V, they specifically state it's the student and educator relationship that they are protecting. You will not find a single reference to sexual harassment under the real estate transaction article, which is Number III. Okay? And that's what this case involves. Now, the Human Rights Commission exceeded its authority. And, your honors, the Human Rights Commission is an administrative agency, it's a creature of statute, and any power and authority claimed by that agency must be found within the terms of that statute, okay, by which it is created. That law is very clear in this setting. In Illinois, they can only act within the Human Rights Act. The order entered by the Human Rights Commission was purportedly based on an alleged civil rights violation of Article III real estate transactions. They squeezed it, they squeezed it in, and somehow the commission determined that Article III indeed was applicable to the facts alleged in this case. Now, we contend that that was a clearly erroneous application of the law, and it's not what the law says, and therefore it is void. Agency interpretations like this involved in this case of a statute are not binding on the courts in this state. The Attorney General's Office cites, I don't know if I'll pronounce it correctly, the Cota v. Illinois Human Rights Commission for the proposition that the Illinois Appellate Court has already held that sexual harassment is a form of unlawful discrimination prohibited by Section 3-102B. Right, your honors. Do you agree that that's what that case says? I agree that that's what that case says. I will also tell you, your honors, the facts are completely distinguishable. In that case, the man literally grabbed the tenant by the hair, pulled her back, kissed her, and then when she got upset and left, he immediately evicted her. Now, the facts here have nothing to do with that, and I will tell you, your honors. Your facts don't amount to jurisdiction, though, do they? I thought you were arguing just jurisdiction. And this is what I'm saying, your honors. What that is is what we contend is a judicially created cause of action that is not bound in the statute. The 5th District is not obligated to follow the 1st District's or 3rd Division's interpretation that created a cause of action that our legislature has in no way written into that act. So you're not distinguishing the case. You're saying we shouldn't follow it. Exactly, because it's a judicially created cause of action. It doesn't exist. It just doesn't exist. They force-fed it in. They looked at the Fair Housing Act of the federal system. Now, this is not a federal case. This was my charge at the federal court, so we're not concerned with the Federal Fair Housing Act and how they force-fed it in. And anyways, there are five elements set out in the Fair Housing Act. They don't even fit those elements. So that case is a fly-by-night, I believe it was a 1998 case, and I've seen one since and probably won't, because there is no such thing. Now, a decision by any agency which lacks the statutory power to enter the decision in this state is treated the same as an agency that lacks jurisdiction. Now, what I want to point out to the court is the statute because a fair reading of it is very clear. In the very beginning of the Human Rights Act, they had stated their Declaration of Policy 1-102A, freedom from unlawful discrimination. Therein they set out unlawful discrimination applies to real estate, employment, military, you name it, okay? That's in the first one. It says based on race, color, religion, sex, national origin, ancestry, age, blah, blah, blah, okay? That's for unlawful discrimination. B, freedom from sexual harassment, employment, and higher education to prevent sexual harassment in employment and sexual harassment in higher education, okay? It says nothing about real estate. Now, it also says in number D, freedom from discrimination, oh, in real estate transactions, but to prevent discrimination based on familial status in real estate transactions. Now, if you look at the definitions, well, okay, it says to be free from discrimination based on sex. That's the key word in this. We contend they have completely misunderstood the definition of the word sex in this statute. It clearly says sex means the status of being male or female. You don't force fit a sexual harassment claim under the word sex, which is what they're trying to do here. If you go to Q, unlawful discrimination, well, how is that defined? That's defined as against a person because of his or her race, color, religion, national origin, ancestry, age, sex. Merrill says as those terms are defined in this section, so it's clearly saying. Okay, now, if you look in the statute, you will see under Article II, employment, E, a special provision, sexual harassment. Then they go on to define what is sexual harassment. Same thing with education. You'll find a specific provision and a definition that goes along with it for sexual harassment. You look in Article III, which pertains to real estate transactions, you will not find one reference to the words sexual harassment. You will only find unlawful discrimination based upon what I had said before, the definition of unlawful discrimination based on sex, national origin, all that. Now, what the commission has done, they said that Article III does cover unlawful sexual harassment because it says unlawful discrimination to alter the terms, conditions, or privileges of a real estate transaction. That was forced fit. Now, we believe if someone had actually looked at that complaint, someone with knowledge of this act, they could have seen right off that no, the Illinois legislature has not adopted any Federal Fair Housing Act. They have not saw to it to add sexual harassment in a real estate transaction. Where is the special relationship? He's not her employer. He's not her teacher. He was her landlord. She wrote the lease agreement. He didn't break the lease agreement. She did. Now, all of a sudden, she doesn't get her money back. The place sat empty for three months. She says he promised to give all her money back. That doesn't make sense. Well, she goes there to get her money. She only gets $300, which, by the terms of the very agreement, he didn't even have to give her the $300. But he did. He gave her the $300. She left apparently angry because that's when she came up with her claim for $170,000 in damages. Of course, she didn't get $170,000. No, she did not. We believe this case involves a false claim using false law and awarding false damages. It's very clear to us that this is a case of where the Human Rights Commission let down another Illinois citizen, that being Craig Kennedy, the businessman of 40 years, let him down because they didn't protect him. And that's in their stated policy to protect citizens from unfounded charges. Unfounded charges. Nobody even looked at it. How do you think he felt when he got that notice of a $170,000 suit based on some woman who came in for 15 minutes to ask for her check that she didn't even deserve according to the contract? Now, what's interesting to note, that the damage award, four times, the administrative law judge points out, four times, that there was absolutely no expert testimony presented. Absolutely nothing. He pointed that out four times at the hearing. They sought nearly $170,000 of which then they offered to settle for $125,000. Now, he questioned her demand by saying, how is it that we have a one-time occurrence in December of 2005 that you still have feelings that you experienced at the time, and why are those feelings still occurring at this juncture, which is a year and a half later, when we're talking about a one-time incident? Counsel, you have time to reflect. Thank you, Your Honor. Ms. Brown, you've agreed to split your time with the full counsel. Good morning, Your Honor. I just want to pray for Richard and Patricia Niemeyer. I'd first like to address the issue that counsel just addressed. I disagree. This is not a case of statutory interpretation. There's no ambiguity in the statute. Counsel just admitted that the only basis for a petition for review is jurisdiction. There's no jurisdictional argument here. She states it was a false claim involving false law, false damages. Mr. Kennedy did not file an objection to jurisdiction until five years later, and here we are. But it is our position that the Human Rights Commission did have jurisdiction to hear this case, and the Kennedys and the Niemeyers claim fell well within Section 3 of the Human Rights Act. And the Sudoka case, I think, is directly on point in that the language of the federal act is almost identical. It closely parallels the Human Rights Act. We believe that it falls well within it. The Human Rights Commission determined that it fell within it. In fact, in its order, it stated that had Kennedy raised the jurisdictional issue, which he didn't, it would still fail. They felt that it was well within Section 3, and it supported the case law that it does, that it was sexual harassment. The Sudoka case, Head Note 2, says sexual harassment is a form of unlawful discrimination prohibited by Section 3.102 of the act. The jurisdictional issue is limited to just that, whether this case falls within Section 3 of the act and is considered sexual harassment. We believe that that case in the First District directly supports that argument that it does. And also, one of the main bases of our argument in our brief is that the administrative code in the Human Rights Act provides that a party must file their written exceptions within 30 days, within 30 days of receiving the recommended order and decision. The clock begins to run four days, the fourth day after receiving the recommended order and decision. The recommended order and decision was mailed out on July 6th. The clock started to run on July 10th. Mr. Kennedy had 30 days to file his written exceptions. He did not do that. He did not file a written extension of time to file any exceptions to the order. So the order of the commission is final. We believe it's final and appealable and it became so on August 11th, 2009. If no timely exceptions are filed to the recommended order and decision, it is a final order without further review. It's only if an exception is filed to the recommended decision and order that it is not final. Mr. Kennedy not only did not file his exceptions, he did not file an extension. And when the order became final on August 11th, 2009, he then had 35 days to file a petition for review. He did not file a petition for review by August 17th, 2009, which would have been 35 days from the date that he received the recommended order and decision. The petition for review is untimely. His time for appealing this matter is certainly untimely. And the only basis for him to file a petition for review, again, is based on jurisdiction. And in order to, you know, catching these, I guess, manifest way to the evidence, where the damage is appropriate, all these arguments are not jurisdictional. Are you claiming that his appeal is not timely? Yes. Yes. The petition for review is not timely. Because there was a final appeal order, which was four days after, the fourth day after he received the recommended order, after it was mailed out. 30, it starts the clock. July 6th, 2009, it was mailed on the fourth day it was considered served. So that would be July 11th, 2009. He then had 30 days to file a written exception to that, or at least file an extension. He did neither. So by August 10th, 2009, he had to have filed, the order became final appeal, because he did not file exceptions. He did not file an extension of time. What happened was, I guess, months passed, and then finally the commission said, you know, I don't remember, they sent a letter or whatever. What they do, and I've reviewed that section of the ADF quite extensively, and it's specifically, it's 5300.920. Within 30 days after service of the recommended order and decision, the party shall file with the commission written exceptions. And then it becomes final under 5300.910. If no timely exceptions to the recommended order are filed, that order shall become the order of the court without further review. At the end of that section, it says, if exceptions are filed, the recommended order will not be considered final. It's our position, and it's clear, I believe, in the statute, that the sentence in the middle, that the commission will serve on the parties, the notification that the order has become the order of the commission. So it's your position that 35 days after August 11th, 2009, if the notice of appeal wasn't filed within that period of time, that there was no jurisdiction in this court? Correct. Correct. And that is supported by 58-111, which is the civil actions commencing. You have 35 days to file that petition for review. Based on those two arguments, that we had a final appeal order, and the time has run, you know, this is almost a case of the phrase, you know, a day late and a dollar short. And we have a default order that was entered. Mr. Kennedy did very little to defend this matter. And then we have a default order entered, several deadlines going both before and after this petition for review was filed. Too little, too late. It seems like, you know, five years later, here we are trying to strike for some jurisdictional issue. Well, we don't believe there was one, and the commission didn't believe that there was a jurisdictional concern then. No objection was filed back then. And I think the case law clearly supports that this claim falls within the jurisdiction in Section 3 of the act. Thank you. Good morning, Your Honors. On behalf of the Department of Commission, with respect to the merits of the case, as Ms. Brame discussed, there really is no viable argument that the department let jurisdiction here to enter the default order, which is really the only way that petitioners could avoid the effect of that default case. Could they avoid it if the appeal wasn't timed? Well, I'd like to discuss it. There are a couple of jurisdictional wrinkles, but just putting those aside for one minute. If you just look at the merits, there was jurisdiction for the default order that was well within the cause of action for sexual harassment. It's a type of sex discrimination that's really been well recognized in the law for a long time, that's specifically addressed in the Zacoda decision, which we believe is well-reasoned, correct, what the legislature intended it should follow. I mean, if that weren't the case, then, you know, for example, a landlord could simply say, well, the way you're wrapped, it's changed for sex, and somehow that would wind up not being any type of violation of the act. We don't believe that's what the legislature intended. There's, apart from the default, there's an attempt to challenge the damages. That's a very deferential review, an abusive discretion review. We don't even get there in this case because no exceptions were filed with the commission, so there was no exhaustion of administrative remedies. That means that issue is not properly before the court, but in any event, there were very modest damages awarded here, $9,000, which was a non-abusive discretion, well-supported by the evidence, and so that argument would fail in any event. The last thing the petitioners suggested is that somehow the department didn't follow its policy, should have investigated it further. Again, that's not a jurisdictional argument. It's not even properly before the court, but again, they're just ignoring their default. The department needed some tools to investigate, and there was no verified response filed after calls by the department saying you need to file this verified response, followed by notice to show cause order saying you really need to file this verified response. Eventually, a default order is entered as the response is still not forthcoming, and then there's an opportunity under the Human Rights Act to appeal the order of default. At that time, to the chief legal counsel of the department, you can request review. I know I didn't do it. Here's my good cause. I should be able to do it now, and that avenue of appeal is not even taken. So nothing that's non-jurisdictional can even be raised at this point, and there was jurisdiction to enter the default order. Now, the jurisdictional wrinkles that the case might present are the commission presents one and the Niemeyers present one. The commission doesn't actually agree with the Niemeyers that the petition for review was untimely. The suggestion there is that the appeal date would run from service of the recommended order and decision, and that's because no exceptions were filed to the recommended order and decision. So under the Act, the recommended order and decision became the final order, and that's correct. And they'd have 35 days to file a notice of appeal to jurisdiction of this court or not? Well, we think that the 35 days runs from we think that the legislature still intended some formal action by the commission. That would be the last step. Such as the notice that was sent? Such as the notice, and those notices, the Act provides. Which wasn't sent until April of 2010. That's correct. So, therefore, you're saying that this court does have jurisdiction because their notice of appeal was timely then? For this argument, yes. We believe the notice of appeal was timely filed because you needed that formal action by the commission, and the petition for review was filed within. That's where you disagree with the claimants? Yes, we do. We believe that the petition for review was filed within the correct 35-day period because you still need that formal action by the commission. The Act, those notices that the commission. And that's just, what do you base that on? The Act, the reading of the Act. Well, what the claimant's counsel, not the co-counsel, but what the claimant's counsel said in her reading of the Act, that the order becomes final if there's no objections filed. We still have to think, so what does that mean in terms of calculating the appeals? We think that the legislature contemplated that really the finality here in terms of being final and appealable did contemplate that formal action by the commission, and that's based on our reading of the Act in which the Act says if no exceptions are filed. The types of notices that the commission sent out say, letting the parties know that the recommended order has now become the order of the commission. So the commission is still making that determination. What's the commission's policy as to when they send out notices? Or do they have a policy? The notice should have been sent out probably. It was not in this case, but we don't believe that. I'm sorry, what was that? The notice should have been sent out. What's their policy? What is the commission's policy as to when they send out notices? I'm sure they would want to treat every claim the same, right? To promptly send out the notice. This one seems to have fallen through the cracks. Do they have a policy? I'm not sure where. I don't think there's a specific administrative rule, but the policy is to send these out as quickly as they can after. Did they follow that policy in this case? In this case, there was a delay. There was a several-month delay, but I would still say. . . And could there still have been a delay had there not been a request? I forget which side sent a letter in saying what's going on. Which they could have done earlier. But there's no requirement of that. If they've got a policy to timely send out their notice. But occasionally things fall through the cracks, and it's our position that that delay doesn't determine the appeal time. Any court, any tribunal could have a delay in issuing a final ruling, and you'd still need that final ruling in order to trigger the appeal time. But they don't have a written policy as to when they're supposed to send out the notice in order to make this a final appeal of arguments? I'm not aware of a specific written policy. But we believe that the Act contemplates this type of final action that's based on the language of the Act, which says these notices go out. If no exceptions are filed, the same type of notice goes out, even if exceptions are filed, but the Commission simply decides not to take the case. And we don't believe that the legislature intended to have two different appeal times involved. Also, the view that the recommended order became final sort of creates this springing jurisdiction where you never really would wind up with 35 days to appeal, because you have the recommended order, it would become final 30 days after service because no exceptions have been filed. And then to calculate your appeal time, you'd still go back to service of the recommended order decision, and then you'd have 35 days. So we'd really just end up with a few days to appeal. So we think that the legislature... Why wouldn't you have 30? If the recommendations without any exceptions are filed becomes final within 30 days, why wouldn't you have, then, say, 35 days from that date in order to file your notice of appeal? Because of the language in the Act that creates the appeal time, it says 35 days of service from the decision that's being reviewed. So I think just overall when you look at the Act, it seems clear that what the legislature really contemplated was a clear 35-day period. We all agree that the legislation could and probably should have cleaned up, right? It is a little confusing. It could be clearer, but I think the 35-day period is kind of a well-established benchmark in administrative review law, and that's what the legislature intended here from that final formal action by the Commission. But we actually think there's a different jurisdictional wrinkle, which is that the petition for review that was filed did not name the department. It was a party of record. And the department is a party of record here because it's actually the department that entered the default order, and that's the Pinkerton case talks about how in these types of default situations, the department is a necessary party and a party of record. So it's established under the law. The Illinois Supreme Court has said that it's held that the failure to name all parties of record in an administrative proceeding is a failed defect that requires dismissal. That's the McGaughy case, and there are other decisions that I cite in my brief. And then the question becomes, well, is there some opportunity for amendment? And the legislature did provide an avenue for amendment, and our position is that that's not an avenue that's any longer available to the petitioners. The avenue for amendment is Section 3113B of the Administrative Review Law, and that creates a 35-day amendment window. That's a fairly recent amendment within, I think, 2008. And under that window, if the court determines that a party of record wasn't named, then the court makes that determination and then grants 35 days from the determination to name and serve the missing party. And here, the 35-day window opened and closed. Seeing that the department wasn't named, the department, as an unnamed respondent, the commission filed a motion with the court, calling it to the court's attention, calling it to the petitioner's attention. The court entered an order on July 15th, finding the department's a necessary party. You have 35 days to file an amended petition that simply names the department. The 35-day window opened and closed. By my calculations, it would have been August 19th, 2010. No amended petitions filed. Actually, a number of months later, in September, the court again, in an order, directed the petitioners to file an amended petition. And the context of that order was there had been some confusion about the due date for petitioner's brief. So the order clears up the confusion about petitioner's brief and says the petitioner is still directed to file this amended petition. And now we're actually outside the 35-day window. And just so the court has the whole picture, petitioners eventually did file an amended petition, and that came about after the department commission's brief was filed, including calling this argument to the court's attention. So in March, the petitioners moved to file an amended petition. Now, that's now seven months after the window's closed. March of 2011. March of 2011. And on March 15th, the court did enter an order that allowed filing of an amended petition. But the court has not yet considered the effect of that or the effect in the original petition of the failure to name. And under this case law, we feel that requires dismissal. Thank you. Was that cross-appealed? The fact that the trial judge allowed the amendment? The fact that the trial judge. It's this court that allowed the amendment, and that was just recently. Thank you. In rebuttal, Your Honors, I would like to point out specifically that it appears that the defense in this case is putting procedural issues over the merits and the actual substance. It's elevating form over substance. Now, they can argue all they want about procedural errors, but most of those have already been ruled in our favor by this court, and that appears to be all they have to argue to your courts. They avoid the real issues, the real issues of statutory construction and misinterpretation. Now, Mr. Kennedy, he faxed a response to the department on the last day of those exceptions, but it was rejected as not being properly notarized. Well, he didn't have an attorney. So they rejected his attempt to file exceptions. But I don't want to argue that because the- Well, they're required to be verified, though, are they not? Yes, it had to be verified, and without an attorney, he just faxed an exception that apparently was not up to form. Now, the administrative law judge in this case four times said there was no expert testimony presented. However, he then turned around and by ordering, even as counsel says nominal damages of $9,000, that is not nominal. $170,000 is not nominal. $9,000 is not nominal. A dollar is more than nominal in this case because there was no cause of action to begin with. They picked up the flag and ran with it. Mr. Kennedy even told the administrative law judge at the damage hearing he believed he was being extorted by these people. He called it an extortion of some sort. Now, he's denied all of these allegations, but they keep wanting to go on with procedural. While you're honest, the law is clear in Illinois. A void judgment can be attacked at any time, and I beg to differ with counsel. It is never too late to attack a void judgment. Any time it can be attacked, we are attacking it here. Well, not if this court doesn't have jurisdiction here. Well, your Honor, if you find that there was a cause of action and there was a proper default judgment entered, then correct. We are. Oh, I'm sorry. This court has to have jurisdiction to even hear the issues. Oh, yes. Whatever they are. Yes. No. All of those questions have already been resolved by the new court in the order entered July 15th. Well, you've got the Attorney General's Office on your side on that issue anyway. Correct. And I would like to say that justice should never fall through the cracks. State agencies have a tendency to like to use words like that, but justice to a defense attorney never should fall through a crack. Never. Your Honor, April 2010 is when the Human Rights Commission finally notified Mr. Kennedy. Now, I think it's very clear the statute is very vague and ambiguous, but I will tell you, Your Honors, when it comes to the damaging words, she is serving back and future wages claiming $64,246.40. The judge even said, well, this request seems odd, since Patricia was not even working at the time of the incident, nor was she working a year and a half later at the time of the damage hearing. These are the arguments that should have been made instead of defaulting on the complaint. No, Your Honor, this is at the damage. He was at the damage hearing. This was what she said at the damage hearing. She came in with a whole bunch of calculations. They're all in the record. She had it down. And even the judge questioned it. He said, well, you weren't working then. You weren't working now. And she said, well, she based it on the theoretical job that she could have had. She also stated that she needed 20 months of wages until she recovered 80% of her emotional health. Do we owe any deference to the finding of the commission? Well, Your Honor, if the commission, if you find that there was a complaint. You're arguing the facts now. Do we owe any deference to the fact finding? Oh, no, Your Honor. These are the facts at the damage hearing that I'm discussing. These are not facts that came out at the default. Without damages, I doubt anybody would be here today. Correct, correct. She claimed out-of-pocket expenses of $5,000. She had that all broken down. Oh, she claimed $90,000 for insurable damages. Now, these insurable damages, she said she had sustained 20% permanent damage to her personality, leadership skills, and emotional state. She didn't get any of those things. No. The judge said that was speculation. Then why, when there was no evidence presented, was anything awarded? Thank you. Thank you, counsels, for your arguments and your briefs today. We'll take a matter in advisement.